**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANNIE WILEY, #B82633,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:24-cv-01348-SPM** |
| **SETH MERACLE, *et al.,*** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

This case is before the Court on Plaintiff Dannie Wiley's Motion to Amend (Doc. 65), and his Proposed Amended Complaint (Doc. 65-1). Wiley is an inmate of the Illinois Department of Corrections (IDOC) currently housed at Centralia Correctional Center. His lawsuit concerns events that transpired at Pinckneyville Correctional Center (Pinckneyville) in late 2018. Upon review of the initial Complaint, the Court allowed Plaintiff to proceed on three claims against 17 defendants (Doc. 13). Defendants moved to dismiss the claims as time-barred (Docs. 38, 43), and the Court denied the motions (Doc. 45). On December 9, 2025, the Court issued a scheduling order directing the parties to work towards identification of three John Doe defendants and setting a deadline for Defendants to seek summary judgment on the issue of exhaustion (Doc. 49). The scheduling order was subsequently extended to allow more time for John Doe identification (Doc. 57). Ultimately, Plaintiff had until June 2, 2026, to move to substitute named individuals, and defendants had until June 17, 2026, to file motions for summary judgment on exhaustion. Rather than identify the John Doe defendants, Plaintiff seeks leave to amend (Doc. 65).

Plaintiff's Amended Complaint is now subject to initial review. Under 28 U.S.C. § 1915A, the Court must screen all prisoner complaints to filter out nonmeritorious claims and must dismiss

1

any portion of the complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a), (b). The factual allegations of the *pro se* complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**BACKGROUND**

As an initial matter, this is the second time that Plaintiff has filed a lawsuit concerning events that occurred at Pinckneyville in late 2018.  Plaintiff previously pursued a lawsuit that was nearly identical before the undersigned, but he voluntarily dismissed that case in July of 2023. Under Illinois law, a plaintiff may re-file a civil lawsuit within 1 year of voluntary dismissal regardless of statute of limitations problems that might otherwise bar claims.  *See* 735 ILCS 5/13-217; *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 755 (7th Cir. 2021) (finding that under Illinois law, an inmate had one year from the voluntary dismissal of his lawsuit against prison officials to refile his complaint).  Plaintiff re-filed the present complaint in May of 2024, so he fit within the one-year timeframe to refile.

In Plaintiff's prior litigation, he was allowed to proceed on three claims against numerous defendants. *Wiley v. Meracle, et al.*, Case No. 20-cv-1140-SPM (Doc. 37).  The allegations in this case all stem from an alleged incident of excessive force by Defendants Smith and Mercale on October 29, 2018, and Plaintiff's subsequent efforts to seek medical care for a lump on his head and cuts on his wrists in the subsequent six weeks before he was transferred to another prison.  In the present matter, Plaintiff was allowed to proceed on the following claims:

> **Count 1:**  Eighth Amendment claim against Meracle, Smith, and John Does 3 and 4 for the use of excessive force against Plaintiff on October 29, 2018.
>
> **Count 2:**  Eighth Amendment claim against Meracle and John Does 3 and 4 for stripping Plaintiff of his clothes and leaving him in the cell naked.

2

**Count 3:**     Eighth Amendment deliberate indifference claim against Meracle, Johnnie Smith, Molly, Samolinski, Gregory, Alvis, Hill, Mason, Heck, Myers Sr., Mac-Shane Frank, and Chris Smith for their roles in denying Plaintiff access to medical care for his injuries to his forehead and wrists from October 29, 2018, until his transfer on or around December 12, 2018

**Count 4:**     Eighth Amendment deliberate indifference claim against Defendants Miller, Dearmond, and Unknown Doctor for denying Plaintiff care at appointments on November 26, 2018, and November 27, 2018

(Doc. 13).

In the Motion to Amend, Plaintiff indicates that he was "unable to obtain information as to the unknown and Does," and he now seeks to amend to add two additional defendants and additional theories of relief. (Doc. 65 at 1). The additional defendants are John Baldwin (the alleged IDOC Director in 2018), and Larue Love (the alleged Warden of Pinckneyville in 2018). Plaintiff does not mention either of these new defendants in the primary narrative of the complaint, which remains unchanged from earlier pleadings and still names John Does 3 and 4 and an unknown doctor with no further specificity. (Doc. 65-1). At the end of the complaint in the statement of claims, Plaintiff charges Baldwin and Love with "supervisory liability" for knowing of and endorsing a widespread environment of abuse at Pinckneyville. (Doc. 65-1 at 34). Plaintiff alleges that Love had knowledge of "many prior incidents, grievances, excessive force reports, inmate complaints and attorney complaints," about widespread abuse at Pinckneyville. Plaintiff further alleges that Love knew Mercale had a propensity for excessive force and mistreatment of inmates. Plaintiff goes further to allege that as part of the policy or custom of mistreating inmates, prison administration did not punish unconstitutional conduct and instead actively promoted officers who engaged in abusive conduct. (Doc. 65-1 at 34). He explains that both Defendants Mercale and Frank were promoted by way of this policy or custom. (*Id.*).

As to Baldwin, Plaintiff alleges he failed to take corrective steps despite knowing of

Mercale's abusive behavior from reports and appeals of grievances, reports of excessive force, attorney complaints, and several prior incidents of abuse or excessive force.  (Doc. 65-1 at 35).

### MERITS REVIEW UNDER 28 U.S.C. § 1915A

Plaintiff premises his new allegations against Love and Baldwin as "supervisory liability," but supervisory liability is not recognized under § 1983.   Section 1983 "liability is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow,* 678 F.3d 552, 556 (7th Cir. 2012). Therefore, "an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* (citations and quotations omitted).   The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  Thus, to the extent that Plaintiff attempts to hold Love and Baldwin responsible purely for their roles as high-level supervisors within IDOC, any such theory is dismissed.

There are two alternative theories to analyze.  First, Plaintiff may be attempting to assert that Love and Baldwin are responsible under *Perez v. Fenoglio* for receiving grievances and correspondence and turning a blind eye.  In *Perez*, the Seventh Circuit allowed an inmate to proceed against several prison officials who allegedly received correspondence about an inmate's medical situation and allegedly refused to exercise their authority to investigate or intervene.  792 F.3d 768, 782 (7th Cir. 2015).  The Seventh Circuit emphasized that each of the named prison officials received notice of the inmate's objectively serious medical condition and inadequate care through "highly detailed grievances and other correspondences."  *Id..*  Though the Court respects the premise of the *Perez* holding, it finds that Plaintiff has not plausibly linked his situation to personal knowledge of Love or Baldwin.  Plaintiff makes the conclusory allegation that both received grievances, inmate complaints, reports of excessive force and more, but he does not specify how much of this correspondence came from him as opposed to others, nor does he explain

when it was sent, or what specifically the correspondence alleged. Plaintiff's allegations about Love and Baldwin's knowledge of a risk to him, or their participation in a broad scheme of abusive conduct, are too generic and conclusory to proceed. *See e.g. McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("conclusory allegations merely reciting the elements of a claim are not entitled to the presumption of truth.").

Second, Plaintiff appears to be seeking to hold Love and Baldwin liable on the premise that they created, maintained, or participated in a custom, policy, or practice that caused or amounted to unconstitutional conduct. This sort of theory aligns with *Monell* liability, which is often pursued to recover from municipalities or from IDOC's medical contractor. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Liability against prison administrators as policymakers is an attempt to recover from state employees in their official capacity, so the Court must consider if they are even subject to this claim because the IDOC is protected from suit by sovereign immunity under the Eleventh Amendment. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) ("plaintiff sued the defendants in their official capacity, and so the lawsuit is against a state agency"). The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law."). Here, Plaintiff does not seek

injunctive relief, he is no longer incarcerated at Pinckneyville, and he does not allege Love and Baldwin still hold positions with any influence over him. As such, his allegations against Love and Baldwin pertaining to their roles as policy makers do not fit within the *Ex Parte Young* exception, and the allegations may not proceed.

For all of the foregoing reasons, the Court finds that Plaintiff's Amended Complaint has not presented any additional allegations that are sufficient to proceed, so the Court will not designate additional claims to proceed in this case.

### JOHN DOE DEFENDANTS

Per the Court's April 13, 2026, Order, Plaintiff had until June 2, 2026, to file a motion to substitute named parties for John Doe 3, John Doe 4, and the unknown doctor (Doc. 61). Despite Defendants' counsel attesting that responsive information on this issue was exchanged (Docs. 64, 66), Plaintiff has not moved to replace the Does with named parties, nor has he explained additional steps necessary to identify these individuals. As the Court previously cautioned (Doc. 49 at 3), the Does will now be dismissed for Plaintiff's failure to identify them. The Court does not take this dismissal lightly and regularly undertakes significant efforts to guide parties through the identification of Doe defendants, but here it appears any additional efforts would be fruitless. Plaintiff has been unable to provide any meaningful description of John Does 3 and 4 (Doc. 62). Additionally, he does not complain that Defendants' have not assisted him, and to the contrary, Defendants have undertaken efforts to provide him with responsive information such as shift rosters. It is also noteworthy that significant efforts were undertaken in Plaintiff's previous filing of this lawsuit to identify the unknown doctor, so there have been many opportunities to secure the identity of unknown parties. *See Wiley v. Mercale, et al.,* Case No. 20-cv-1140-SPM (S.D. Ill.) (Docs. 43, 55, 60, 63). Accordingly, John Does 3 and 4, and unknown doctor, are now dismissed without prejudice for Plaintiff's failure to affirmatively identify them as directed by

Court orders.

## DISPOSITION

Plaintiff's Motion for Leave to Amend (Doc. 65) is **DENIED** because his proposed amended complaint (Doc. 65-1) does not contain any claims that are sufficient to proceed beyond § 1915A review as explained above.

Defendants John Does 3 and 4 and unknown Doctor are **DISMISSED** from this action without prejudice for Plaintiff's failure to meet Court deadlines to affirmatively identify these individuals. The Clerk of Court shall **TERMINATE** Defendants John Does 3 and 4, and unknown doctor. The Clerk shall also **TERMINATE** the Warden of Pinckneyville who was added to this action solely for assistance with John Doe identification.

Defendants' Motion to Stay (Doc. 66) seeking to stay this case pending a ruling on the Amended Complaint is also **DENIED**. However, the Court will **extend Defendants' deadline to file dispositive motions on the issue of exhaustion to July 20, 2026**.

**IT IS SO ORDERED.**

**DATED:  June 18, 2026**

_____
**STEPHEN P. MCGLYNN**
**United States District Judge**